The first case is Smalls v. Amazon.com Services. Good morning, Your Honors, and may it please the Court. Michael Sussman, Goshen, New York, arguing for Mr. Smalls. This appeal relates to a motion to dismiss which the District Court granted on three issues. The first issue is Mr. Smalls' claim that he was terminated on the basis of his race. The second was that he was terminated because of his oppositional behavior. And the third related his desire to represent a class of individuals we believe was similarly situated who had been adversely affected by Amazon's policies and practices with regard to the pandemic in its early days. With regard to the first argument, the District Court determined that the complaint did not adequately set forth a basis by which an inference could be drawn that race discrimination played a significant role or a but-for role in Mr. Smalls' termination. We believe this is an erroneous conclusion. We believe the complaint does adequately set forth a basis for that conclusion. Simply stated and given that we've briefed the matter extensively, Mr. Smalls is African American. He had been a supervisor for three and a half years. He had performed his duties according to what we've understood in the complaint adequately. He was terminated and the reasons given for his termination were absolutely pretextual. The circumstances of the termination were his advocacy for better health policies which related to the disproportionately minority workers who he represented essentially as the line foreman on the floor. He wasn't in some office. Don't we have cases that say when a termination or an action is pretextual, but is pretextual for reasons that do not have to do with race or something, the fact that it's pretextual counts against. I mean, here there's good reason to think that they fired him because he was trying to organize them. Well, he succeeded in organizing, as we know, but that's really not, as I view it, the issue. The issue here is that the reason they gave was a reason a jury could very well disbelieve. It wasn't because he was on a quarantine. That's not why they fired him. You're missing my point. We have said that when something is pretextual in the sense that it is not the reason they gave, but the reason that for the pretext is obvious and is not a protected reason, then the fact that it is pretextual in that sense doesn't count. But there are two reasons here. One reason is because of his race and his advocacy, and a jury could find, based on all the facts in the case, that he was terminated because of his race, not merely. So then we have to go back to the question of what race-based arguments he has actually made. And in that regard, the most serious race-based argument he made is pointing to a memorandum written a couple of days after his termination by a senior vice president, which uses clearly stereotypic language in describing Mr. Smalls and indicates that he would be the person that Amazon would like to be the spokesperson for the movement of disaffected individuals because he's not smart and not articulate, which other courts have found to be code words for race. But what does that have to do with his firing? That sounds like they'd love to have him around as a punching bag because they're racists. Isn't that a rather different thing? His own complaint tells us that he was fired immediately after engaging in a demonstration that called attention to the inadequate health conditions in the warehouse. And that's the immediate proximate cause. Whether that's because he should have been in quarantine or whether that's because they just didn't like him being at the demonstration, that's a terrific factual issue. But what is there anywhere that suggests that if a white manager in his position had engaged in exactly the same behavior, he wouldn't have been treated the same way? Because it would be unlikely that a white manager could be seen by someone who'd never seen him before and only knew his race as someone who is not articulate and not smart. They didn't fire him because he wasn't articulate and he wasn't smart. My point is that does inform the situation. When you say they didn't fire him... That may say something about the general background and attitude at Amazon, but it doesn't say much about the firing. It may be something that would lead us to say, gee, this is a pretty racist place in general. Maybe. But what does it have to do with the firing? What it has to do with the firing is that he was an individual who they understood to be highly active. He was terminated. The termination was essentially applauded by a senior manager, and the reason it was applauded was because... Did that memo say, thank goodness we fired him? No, it said the fact that he's fired gives us this opportunity to make him the spokesman now. He's an ideal spokesman for this movement, which only would have been by dint of the fact that he had been martyred, essentially. That's why he was an ideal spokesman. He martyred him. But it was written after the termination by one individual. The complaint doesn't allege that this individual played any role in the termination at all. Well, he was in a senior position with the company. You're right that it doesn't allege he played a role, but the fact is that the company acts as a corporate unit, and the company applauds the action by someone we don't know who fired him. It's not clear yet. The point is... Your time is running short. I wonder if you'd want to spend some of it talking about the oppositional activity, because it's clear that it's plausibly alleged that he was fired for engaging in oppositional activity, and the question, I suspect, is going to be opposition to what? Right. And paragraph 26 makes clear opposition to what. During this rally, he opposed practices which discriminated against minority workers and immigrants by subjecting them to inferior terms and conditions of employment due to their race, ethnicity. What evidence is there that with respect to COVID, managers and line workers are situated in the same way? They're situated in the same way because they both fall within the statute, which is New York Labor Law 200, which requires a safe workplace for both of them. The fact is that the company did not expend the resources to provide a safe workplace to these marginalized individuals, but was happy to do so, according to the complaint, for other individuals. So they had the same basic right to that kind of workplace, and in that regard, they were similarly situated. Okay. But if they have the same basic rights, but say some people are working only in closed places and some people are working only in open places, then the same rights have different forms. What I don't know is whether the line workers and the managers are working in similar conditions, therefore require the same kind of care with respect to COVID. They don't require the same care. They require different care, but that's not, to me, the point. The point is they obviously require different care because some of them work normally in a situation where they have much more close proximity. So that requires giving out PPE. It requires enforcing social distancing rules. It requires things that have to have been done at the workplace and were not being done. So I agree with you. There are two different sets of things that have to be done. It's not the same. But they both have a similar right. This is dissimilar from situations where employees are subject to different work rules, meaning, and there's disciplinary action taken against them. They say, well, these people aren't similarly situated with respect to what they were supposed to do at the workplace. Those cases are not analogous here. The underlying obligation of the company was to provide these different groups of workers with protection. They failed with regard to one. Mr. Smalls pointed that out both in individual meetings with the company and more broadly at the rally. Yes, Your Honor. I think I have that point. Now, on the third issue, what in the complaint tells us? I mean, there's a lot in the complaint about the difference between management and warehouse workers. What in the complaint tells us into which category Mr. Smalls falls? What tells us is that Mr. Smalls was supervising individuals, 60 individuals. These 60 individuals were line individuals who he supervised on the line. That was his job. He's not innocent. Where do we find the, in other words, there's a lot of distinction drawn in the briefing and in the complaint. As far as I can tell, between management and line workers. And his title, Mr. Smalls' title is a managerial title. And I don't know what, that may mean nothing in terms of whether he has standing to complain about in court. He can complain all he wants to management or the general public. But what gives him standing to raise the failure to provide specific modalities of protection to the line workers? I'm not saying he doesn't. I'm just trying to find out where I will go to learn. Paragraph 9 states on March 24th, 2020 work of Barbara Chandler with whom Smalls had had close contact, tested positive for COVID-19. That's an indication or perhaps a hint of the sort you're thinking of. But it's conceivable that the president of the company might have had close contact with one particular individual. What tells us that you said a few moments ago, excuse me, you said a few moments ago that Mr. Smalls works on the line in the warehouse, hands-on supervision, direct contact with warehouse workers. Where do we find that in the complaint? Paragraph 15 indicates between March 25th and 28th, Smalls served as a liaison between workers, etc. His role is explicated in that sense. He was someone who was directly involved with the workers on a moment-to-moment basis. It may not be sufficiently explicated, but I think it's a fair inference from reading this complaint. Thank you. Thank you. We'll hear from your adversary. Good morning, your honors. May it please the court. Jason Schwartz on behalf of Amazon. I'd like to address each of the three causes of action that we've just discussed briefly. The complaint, as Judge Kovner found, not only fails to state facts to make any of those causes of action plausible, but it actually pleads out of each of those causes of action. So let me start with the supposed differential treatment that is framed as an intentional race discrimination under Section 1981. Judge Kovner found that there were insufficient facts to plead the cause of action and to establish Mr. Smalls' standing. He alleges that the company, quote, unquote, gave greater diligence to the health and safety of managers. Number one, even if that was true, that's not intentional race discrimination. He pleads specifically that there are members of various races in both groups. He also does not plead that the two managers and line workers are similarly situated. In fact, counsel just admitted to you that they are not. That's consistent with the CDC and OSHA guidance. Now, is it enough to show or to allege that there is a racist attitude in Amazon, which perhaps could be shown by the comment after and by the treatment and by various things that are in the complaint, than to say there is a different treatment and the people are sufficiently different from each other in terms of race? Is that enough? Respectfully, Your Honor, the complaint does not even do that. So, number one, the complaint does not show that the two groups are similarly situated, and common sense tells us that they're not. The CDC says that each group should be, each job should be protected according to its duties, which vary. The Offer case granting a motion to dismiss is a great example of that. Number two, the disparate impact, and this is referred to in the complaint, paragraph 39, in the reply, page nine, is not disparate treatment discrimination. So, even if there were disparate impact, that is not sufficient. Number three, the allegations themselves actually don't support any kind of differential treatment. Most of the things that are alleged in the complaint would apply to everyone in the building. His principal complaint was that it was not adequately cleaned. That applies to everyone there. He also lacks standing. Judge Lynch, as you pointed out- But, do I understand you to be saying that regardless of standing, there is no merits to the class action? That's correct, Your Honor. There's nothing pled here that would establish any inference of intentional race discrimination. In fact, he pleads out of it. We're not at the stage of thinking about class actions. No one's moving for certification. No one's moving to deny certification. We're at a motion to dismiss stage. Before anyone ever thinks about whether there is a potential class here, the real question with respect to the third claim is whether Mr. Smalls has standing to complain about the treatment of line workers. Because he either is or is not to be characterized as the kind of person who is mistreated by the failure to protect the line workers in the ways that he says should be done. That's 100% correct, Your Honor. Number one, he doesn't plead that he was a line worker. The only allegation says he supervised 60 subordinates. He had an opportunity to amend the complaint. Judge Kovner invited him to do that, and he declined the opportunity. So when counsel tells you that the complaint maybe doesn't contain those facts, he had every opportunity to add them. Number two, he's not a current employee, so he has no standing to seek injunctive relief. He finally concedes that in the briefs. And number three, he doesn't allege any harm that occurred to himself. The closest he comes is saying he was exposed to someone. He doesn't even say he got COVID, much less that he got it as a result of some racially discriminatory safety policies. So you're 100% correct, Your Honor. There's no standing, as Judge Kovner found. The second claim that I'd like to address is the complaint for supposed retaliatory termination. Here again, Judge Kovner found that it was not plausibly alleged, and that's for three reasons. First, he did not engage in any protected activity with respect to race. He says he complained about health and safety. And his three complaints are specifically articulated in the amended complaint. Paragraph 12, he said he requested clarification and quarantine for himself, and he got it. He was quarantined. Paragraphs 21 and 23, he says he went to upper management to complain about health and safety issues, health and safety-related concerns.  And paragraphs 24 and 25, he led a demonstration asking for the entire building to be closed down to be cleaned, because he thought the cleaning staff was short-staffed. That is all about safety, not about race discrimination. In fact, it's not even about differential treatment of line workers versus management, whichever he might have been. Those complaints are all generic safety complaints. As Judge Kovner found, the paragraph that counsel pointed to, paragraph 26, is very carefully crafted not to say that he complained about race, but instead that he believed, supposedly, that the practices he was complaining about were somehow racially motivated. Amazon is not required under this Court's case law to read his mind. He had to do something to indicate he was engaged in protected activity. He didn't. He argued below, by the way, that, oh, actually, what he meant there was he did say it out loud. And so Judge Kovner invited him to amend. He said, you can tell us if you actually said it out loud. Notably, he did not amend. And what he's telling this Court is something different. Not that he ever said it out loud, but that his subjective belief was that this was discriminatory, and Amazon somehow should have figured that out. What about the first claim that Smalls was terminated because of his race, the one that Mr. Sussman began with today? Absolutely, Your Honor. Let me address that. So, again, Judge Kovner found that there was nothing to create even a plausible inference that his race had anything to do with his termination. He points to two supposed race-related allegations in the complaint. Let me address each of those. Number one, he points to this supposed memo in paragraph 31 of the complaint. As Judge Kovner found, the memo is not about his termination. So, at best, it's a stray remark. It's not even alleged to be by a decision-maker. It is made after the fact, and it does not refer to race on its face. He had an opportunity to amend. He didn't do so. His own case law, for example, Your Honor, I would suggest you look at the Lloyd v. Holder case, which deals with the exact same comment, the quote, unquote, inarticulate. And what it says is that if on its face it's not race-related, it could be a code word, but you need to plead additional evidence from which a jury could plausibly reach that conclusion. He fails to do that. Again, not about the termination, not by a decision-maker, not about race, and nothing more. The only other allegation in the complaint that has anything to do with race, other than his purported subjective belief that he never articulated, is paragraph 23, that the second time the group of employees, which included both minority employees and white employees, came to management about, quote, unquote, health and safety, management, quote, appeared far more receptive. I don't know what that means, Your Honor, but it does not contain a fact from which you could plausibly infer. Counsel, may I ask you about something else? Of course, Your Honor. He also pled state and city, and there's been no discussion of that. The state law is the same as the federal. The city is not. And there's no discussion by the district court, as far as I can tell, about why the city court should be dismissed rather than dismissed without prejudice, as we often do if we get rid of all of the federal cases. And say, well, let that go on separately. Two responses to that, Your Honor. Number one, the state and city causes of action have the motivating factor standard. Judge Kovner found that even under that standard, applying this court's decision in Little John, there is a failure to plead even a minimal inference of race or protected activity retaliation. So those causes of action fail for the same reason. Number two, Your Honor- The state one, I have no problem. It's the city one, where the city law has been read by the state to be much broader, and I just don't know. Understood, Your Honor. But it does still require a motivating factor, which Judge Kovner correctly found was missing. Number two- Does it matter to your argument that nowhere in the appellant's brief is there a separate discussion of the city law or a claim that the city law claims stand in any different relation than the federal one? That's correct, Judge Lynch. I mean, to the extent that Judge Calabresi is raising the issue, it's been waived. He has not made that argument. Forfeit is, I believe, not waived, but- Yes, Your Honor. That's where I thought you would go, but I- Yes, Your Honor. The last thing I would say on that point, and this is really academic, but the state and city causes of action, and we briefed this, are preempted by the National Labor Relations Act. Yeah, but that wouldn't do it because that's a defense, so don't- Fair enough, Your Honor. Let me just make one final point with respect to your question, Chief Judge Livingston, and that is with respect to the racial termination claim. As I think all three of you have pointed out, the complaint itself pleads out of that. It states a far more plausible alternative scenario. The way I would say it is it states he was exposed, he asked for quarantine, he was ordered to quarantine, and he returned to the work site, and immediately thereafter he was fired after exposing, according to him, 60 co-workers to the virus. I understand your point that you could also read a different inference. Whatever inference you read, it is not the unlawful inference he is suggesting, and therefore, Judge Kovner was correct to dismiss that claim. Thank you, Your Honors. The law in the circuit is that Amazon should have known, would have known, from the context that he was speaking about race. It's not that he has to speak directly and say this practice is discriminatory. It's that in context there would be an understanding that what he was complaining about when he was speaking about the overwhelmingly minority workers who he represented in three now contexts, the two meetings which were described, and the third, and was complaining about the disparate, and that's what he was complaining about, that's what the complaint says, the disparate treatment that they were receiving as compared to the white managerial workers, that the company should or would have known that was racially biased. And my argument is they would have. And in terms of the pleading standards in this circuit and the standards even after Iqbal, this Court should say that it's rather clear from the complaint that the company would or should have known that, and that is reinforced by the comment made by management. Management's comment suggests that they understood there was a movement which, of course, crystallized in the union which later formed at that very facility. They understood there was a movement that was developing. They understood that movement was developing around in part opposition to these kinds of practices, and that Chris Smalls would be the perfect leader of that movement. That only can be understood in America in 2021 as being in part at least about race. He's not smart. He's inarticulate. He's the guy. And that only becomes concrete if he's in fact terminated. Kennedy. He seems smart and articulate enough to mount a major movement that has succeeded in unionizing.  They misunderstood him, didn't they? They underestimated him. And to say that's a stray comment when it's made by a senior vice president who's a general counsel of the company is absurd. It's not a stray comment. It's a comment which reflected exactly what they did. They terminated this man because they understood he was a threat. They understood he was a threat because he had residence with the overwhelmingly minority workers that he was working with. He started that work at that time around the issue of health and safety, but it's the discriminatory aspect of it that's relevant to this case. Counsel, are you making any arguments about the city being different from the state? We forfeited the argument. I agree with that. You forfeited. We did forfeit that argument. There are differences, but we didn't raise those issues because I believe the federal opposition issue obtains and prevails. Thank you. Thank you both, and we'll take the matter under advisement. Nicely argued. Thank you. The next case is United States v. Santiago. Good morning, Madam Chief, and may it please the court. My name is Daniel Nutter. I represent the defendant appellant, Ms. Omayra Santiago. In United States v. Green, this court held that 18 U.S.C. 641 was not a continuing offense, and therefore, any restitution awarded for violation of that statute is subject to a five-year statute of limitations. Now, although the Green precedent was brought to the district court's attention shortly prior to Ms. Santiago's sentencing, the district court indicated it had not read Green and was not going back to January 2005. Right, but it was a restitution to which she had agreed. Well... Hypothetically, and I know this is not what you contend or the fact, hypothetically, if she, in full knowledge of her options, agreed to pay that restitution as part of a plea agreement, that would, the court would be entitled to rely on that, wouldn't it? Yes and no, Judge Lynch. First of all, it would have to be an agreement supported by consideration, which this was not an agreement supported by consideration. Okay, but those are the issues, right? One question is whether this is a valid plea agreement in that respect, and a second would be whether it's invalid because of ineffective assistance of counsel, right? Those are the two, I think those are the two principal things we're talking about here. Yes, but again, the plea agreement needs to be read as a whole. In determining whether she agreed to this or not, you need, you can't just take one sentence out of context. Respectfully, I think you need to construe the entire agreement. And in light of Green... Counsel? Yes. Are you asking us to throw out the whole agreement so that you would go back and the court could give a different sentence with respect to possible jail or just the monetary restitution? We're only addressing the asking for... Yeah, but that's my question. Can you do that? Well, I think... That is, if you're saying that this was improper and that there wasn't an understanding because after all, this isn't a case of a law changing after but of a law being different before so it doesn't go with the cases where we say... But can she say, I want only this because this is wrong? Now, this doesn't mean that counsel shouldn't have argued, that's a different issue. But on the merits of whether this was not an adequate agreement, is she asking for the whole thing or just one? I think the restitution question is severable, Your Honor, because as the district court itself noted in this case, the restitution played no role in her consideration of what sentence to give. She says this on page 98 of the appendix where Judge Hall says, this isn't a case where someone agrees to pay more restitution and hence they get a lower sentence. Ms. Santiago is making $538 a month. That's not going to pay this restitution. Setting aside the authority for that proposition, I mean, setting aside the ineffective assistance claim, if the claim is that her plea was not knowing and voluntary, we don't usually pick and choose with regard to what. We just say, well, you're arguing for your plea back. But what we're saying is that there was not a waiver of this right, that the government needed to bargain for a waiver of this right post-Green And the government clearly bargains for a number of other. They enumerate every right that they want Ms. Santiago to waive over three pages of the plea agreement and then add an integration clause that says nothing else is waived. So when you – so I'm suggesting before – I'm not even saying we need to necessarily get to throwing out the plea agreement. That's somewhat of a backup argument. I'm saying that in construing what she agreed to in the first place But she agreed to the specific restitution amount. Why would she need to make a separate waiver to say I know that I have a right not to do that, but I'm waiving that right? She agreed to the restitution amount. That was part of the bargain. But that restitution amount was based on the mistaken –